UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| SAMUEL C. BAXTER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | CASE NO. 3:04-CV-941 (RNC) |
| | : | |
| | : | |
| FEDERAL EXPRESS CORPORATION, | : | |
| | : | |
| Defendant. | : | |

RULING AND ORDER

Plaintiff brings this action against his former employer alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and the Connecticut Fair Employment Practices Act.[1] Defendant has moved for summary judgment on the ground that, on the record before the court, plaintiff cannot prove that he was subjected to an adverse employment action. I agree and therefore grant the motion.

I. Facts

Viewing the summary judgment record in a manner most

---

[1] The complaint also alleges discriminatory retaliation in violation of Title VII (see Compl. ¶¶ 184-249), but plaintiff's memorandum in opposition to the motion for summary judgment contains no argument in opposition to dismissal of the retaliation claim. Accordingly, the retaliation claim is deemed abandoned. See Matos v. Runyon, No. 3:95CV2012 (AWT), 1998 U.S. Dist. LEXIS 22531, at *13 n.6 (D. Conn. Mar. 25, 1998); D. Conn. L. Civ. R. 7(a)1.

favorable to the plaintiff, a jury could find the following facts.  Plaintiff, an African-American, was hired as a Senior Vehicle Technician at defendant's Norwalk, Connecticut vehicle maintenance shop in 1996.  (Def.'s Local R. 56(a)1 Statement ¶¶ 2, 8.)  His supervisor was Nicholas Fanelli.  (Def.'s Local R. 56(a)1 Statement ¶ 14.)

      In 2002, a co-worker informed Fanelli that he suspected the plaintiff of having sex in the office and that the plaintiff had falsified repair orders and failed to conduct required inspections.  (Def.'s Local R. 56(a)1 Statement ¶¶ 19-21.) Security personnel commenced an investigation, during which Fanelli threatened to "make plaintiff sorry" if he did not resign.  (Def.'s Local R. 56(a)1 Statement ¶¶ 25-27.)  The investigation revealed that the plaintiff had borrowed an engine hoist for a moonlighting job; brought his car into the shop against company policy; taken quarts of oil for personal use; falsified repair orders, inspection forms, service records and time cards; spent thirty to forty minutes a day on the internet; and used a work computer for personal emails.  (Def.'s Local R. 56(a)1 Statement ¶¶ 33-46.)  Fanelli had previously instructed plaintiff to falsify service records.  (Pl.'s Local R. 56(a)2 Statement ¶ 43.)

      As a result of the investigation, Fanelli terminated plaintiff's employment.  (Def.'s Local R. 56(a)1 Statement ¶¶ 51-

52.)  Plaintiff appealed the termination.  (Def.'s Local R.
56(a)1 Statement ¶ 63.)  On appeal, the Managing Director
expressed concern about plaintiff's "behavioral and performance
problems," but reinstated his employment "given [his] years of
service with FedEx and [his] heretofore clean record."  (Def.'s
Ex. 12.)

In lieu of termination, defendant issued a warning letter to
the plaintiff relating to the misconduct issues as well as a
reminder letter for the performance issues.  (Def's Ex. 12;
Def.'s Local R. 56(a)1 Statement ¶ 68.)  Company policy
prohibited the plaintiff from applying to transfer to another
facility within twelve months of the issuance of the warning
letter.  (Def.'s Local R. 56(a)1 Statement ¶ 95.)  During that
twelve-month period, plaintiff inquired about a lateral transfer
to defendant's North Haven facility, which would have saved him
commuting time and expense.  (Def.'s Local R. 56(a)1 Statement ¶
94; Pl.'s Local R. 56(a)2 Statement ¶ B.21.)  But defendant
refused to make an exception to the no-transfer policy.  (Def.'s
Local R. 56(a)1 Statement ¶¶ 96-97.)

On June 13, 2002, Fanelli gave the plaintiff a deficient
performance review rating.  (Def.'s Local R. 56(a)1 Statement ¶
107.)  Because of the warning and reminder letters issued
earlier, this deficient performance review created a risk of
possible termination.  (Def.'s Local R. 56(a)1 Statement ¶ 107.)

At Fanelli's request, the defendant waived the termination option.  (Def.'s Local R. 56(a)1 Statement ¶ 110.)

In September 2002, plaintiff filed an internal equal employment opportunity complaint, complaining that Fanelli (1) threatened him during the investigation, (2) changed his work hours, (3) told him he was employed "on a get out of jail free card," (4) refused to give him his identification badge, (5) denied him training, (6) stated that the company could eliminate a personnel questionnaire question about ethnicity, (7) did not hire an African-American applicant plaintiff had recommended, and (8) did not enter his time cards.  (Pl.'s Ex. 1.)[2]  In response to the complaint, the defendant stated that its "investigation revealed that corrective action was necessary and [would] be taken."  (Pl.'s Local R. 56(a)2 Statement ¶ B.5.)

Plaintiff filed discrimination charges with the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission on March 13, 2003.  (Def.'s Local R. 56(a)1 Statement ¶ 143.)  Plaintiff apparently resigned his employment on April 29, 2005, after this lawsuit was filed. (Def.'s Local R. 56(a)1 Statement ¶ 77 n.1.)

---

[2]   Plaintiff also alleges that a co-worker heard Fanelli say, in reference to plaintiff, that he should have known better than to trust "one of them."  In the absence of an affidavit from this co-worker, the statement is hearsay, and the court will not consider it in deciding this motion.  See Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).

4

II.  <u>Discussion</u>

Summary judgment may be granted only when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the burden of showing that no genuine issue of material fact exists, and all reasonable inferences must be drawn in favor of the nonmoving party. <u>Giannullo v. City of N.Y.</u>, 322 F.3d 139, 140 (2d Cir. 2003). Once the moving party has demonstrated the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings to identify specific material facts that are in dispute.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).

The complaint alleges that defendant discriminated against plaintiff in violation of Title VII and 42 U.S.C. § 1981.  Under these statutes,[3] the plaintiff bears the initial burden of proving a prima facie case of discrimination, which requires a showing that (1) he is a member of a protected class, (2) was qualified for the position, and (3) suffered an adverse employment action, (4) in circumstances raising an inference of discrimination.  <u>Terry v. Ashcroft</u>, 336 F.3d 128, 138 (2d Cir.

---

[3]  Employment discrimination claims brought under § 1981 are analyzed pursuant to the same burden-shifting framework used under Title VII.  <u>See</u> <u>Patterson</u>, 375 F.3d at 225.

2003).[4]  Defendant contends that, on the evidence before the
court, a jury would have to reject plaintiff's claim that he
suffered an adverse employment action.  For the reasons that
follow, I agree.

An adverse employment action is a "materially adverse change
in the terms and conditions of employment."  Richardson v. N.Y.
State Dep't of Corr. Serv., 180 F.3d 426, 446 (2d Cir. 1999)
(internal quotation marks omitted).  The change "must be more
disruptive than a mere inconvenience or an alteration of job
responsibilities."  Galabya v. N.Y. City Bd. of Educ., 202 F.3d
636, 640 (2d Cir. 2000) (internal quotation marks omitted).  "A
materially adverse change might be indicated by a termination of
employment, a demotion evidenced by a decrease in wage or salary,
a less distinguished title, a material loss of benefits,
significantly diminished material responsibilities, or other
indices . . . unique to a particular situation."  Id. (omission
in original) (internal quotation marks omitted).

Plaintiff contends that his termination, disciplinary
warning,[5] and consequent inability to transfer constitute adverse

---

[4]    The Connecticut courts apply the Title VII framework to
discrimination claims brought under the Connecticut Fair
Employment Practices Act.  See Levy v. Comm'n on Human Rights &
Opportunities, 236 Conn. 96, 103 (1996).

[5]    Plaintiff concedes that his discrimination claim based
on the termination and disciplinary warning is not timely under
Title VII because these actions occurred more than 300 days
before he filed his EEOC charge.  See 42 U.S.C. § 2000e-5(e)(1).

6

employment actions.[6]  Because the termination was overturned and

plaintiff was reinstated to the same position with full back pay,

the termination itself created no "materially adverse change" in

his work conditions.  Recognizing this, plaintiff argues that the

allegedly discriminatory termination precipitated the

disciplinary warning, which materially affected his work

conditions because he was unable to transfer to a more convenient

location.

Negative performance evaluations and disciplinary warnings

constitute adverse employment actions when they affect the terms

and conditions of employment.  Sanders v. N.Y. City Human Res.

Admin., 361 F.3d 749, 756 (2d Cir. 2004); Weeks v. N.Y. State

(Div. of Parole), 273 F.3d 76, 86 (2d Cir. 2001); Lewis v. State

of Conn. Dep't of Corr., 355 F. Supp. 2d 607, 618 (D. Conn.

2005).  Thus, a negative evaluation cannot sustain a claim of

discrimination "without any allegation of negative ramifications

for the plaintiff's job conditions."  Fairbrother v. Morrison,

---

However, as plaintiff argues, the discrimination claim is timely
under 42 U.S.C. § 1981.  See Patterson, 375 F.3d at 225 (§ 1981
claims are not subject to the 300-day statute of limitations);
see also Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382
(2004) (claims brought under the 1991 amendments to § 1981 are
governed by the four-year catch-all statute of limitations in 28
U.S.C. § 1658).

[6]  Plaintiff alleges other discriminatory acts, such as
Fanelli's failure to give him an identification badge and enter
his time cards, but argues only that these acts are evidence of
pretext and discriminatory intent, not that they are adverse
employment actions themselves.

412 F.3d 39, 56 (2d Cir. 2005).  For a negative evaluation to be an adverse employment action, its impact on the terms and conditions of employment must be real and not merely potential. See id.; O'Bar v. Borough of Naugatuck, No. 3:01cv867 (PCD), 2002 U.S. Dist. LEXIS 27351, at *9 (D. Conn. Dec. 12, 2002).

Plaintiff has identified only one actual ramification of the disciplinary warning: it precluded his transfer to another facility within the twelve-month performance improvement period.[7] A denial of a lateral transfer does not constitute an adverse employment action unless it results in a materially negative change in working conditions.  Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 128 (2d Cir. 2004); Hajjar v. Dayner, 96 F. Supp. 2d 142, 145 (D. Conn. 2000).  "[I]f a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial . . . of the transfer [an] adverse employment action." Williams, 368 F.3d at 128 (second alteration in original) (quoting Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 n.6 (10th Cir. 1998)).  Subjective reasons for requesting a transfer, such as personal convenience, "do not meet the objective indicia of an

---

[7]    As mentioned earlier, the warning letter, in conjunction with the subsequent negative performance evaluation, exposed the plaintiff to a risk of termination, but the defendant granted Fanelli's request that the termination option be waived.

adverse employment action.  <u>Id.</u>; <u>see also</u> <u>Nonnenmann v. City of</u>
<u>N.Y.</u>, 174 F. Supp. 2d 121, 132-33 (S.D.N.Y. 2001) (denial of
transfer to work location closer to plaintiff's home not an
adverse employment action), <u>overruled on other grounds by</u> <u>Konits</u>
<u>v. Valley Stream Cent. High Sch. Dist.</u>, 394 F.3d 121, 125 (2d
Cir. 2005); <u>cf.</u> <u>Raffaele v. City of N.Y.</u>, No. 00-CV-3837 (DGT)
(RLM), 2004 U.S. Dist. LEXIS 17786, at *61 (E.D.N.Y. Sept. 7,
2004) (denial of transfer to more convenient location might
constitute an adverse employment action when the defendant
transferred the plaintiff to the less convenient location and the
plaintiff had special medical and family needs).

Plaintiff sought a transfer to the North Haven facility to
shorten his commute and ease "the wear and tear" on his vehicle.
(Baxter Dep. 171-72.)  The work would not have been easier at the
North Haven facility (Baxter Dep. 172), and plaintiff still would
have reported to Fanelli (Baxter Dep. 143).  Thus, the only real
consequence of the disciplinary warning was that, during the
twelve months following the warning, plaintiff could not transfer
to a facility closer to his home.  The transfer would not have
involved any material change in benefits, job responsibilities,
or other objective conditions of plaintiff's employment, and his
inability to transfer in no way "represented a setback in [his]
career." <u>Lewis</u>, 355 F. Supp. 2d at 619.  Under this Circuit's
case law, then, a jury would have to conclude that plaintiff's

inability to transfer did not constitute an objectively adverse change in the terms and conditions of his employment.

III. <u>Conclusion</u>

Accordingly, the motion for summary judgment [Doc. #26] is hereby granted.  The Clerk will enter a judgment in favor of the defendant dismissing the complaint with prejudice.

So ordered.

Dated at Hartford, Connecticut this 28th day of March 2006.

<pre>
                    _____\s_____
                       Robert N. Chatigny
                    United States District Judge
</pre>